ROBERTS, Chief Justice
(dissenting).
The plaintiffs sued to collect an attorney’s fee for legal services which they alleged were over and above those, comprehended by and previously performed under a retainer contract with defendant, for which previous services they had been paid. They alleged that the contract was ambiguous and asked the court to construe it, as not including the services for which compensation was sought in the instant suit. The defendant’s position throughout the litigation was that the contract was not ambiguous, that it spoke for. itself, and that it clearly comprehended the services here involved. ■
The facts are not in dispute and are briefly as follows: The defendant was the lessor of hotel premises urider a léase agreement which' would expire on October 31, 1950. ' In' the summer of 1949, she was having difficulty with her lessees respecting repairs to the exterior and interior of 'the premises which, under the lease the lessees were required to make. She also suspected them of conducting illegal activities on the premises. At. the beginning of .the .lease,, the. lessees had made to her a security-deposit o,f .$50,000, $20,000 of which was to be returned by her to them in two installments of $10,000 each in January and March of 1950. The balance' of $30,000 -was ■ returnable to them) at the time of the ‘expiration of the lease, less any damages for which it was security. The lessees were required to account for any damage to personalty, or shortage in inventory therein,’ at the time of the expiration of the lease, but not before. ■ ■
The defendant’s..main concern appears to have been the .repairs to the exterior of the premises, since she was desirous of having these made promptly for insurance reasons and also to offset their amount against the $20,000 of the deposit which she would be required to return in January and March of 1950: She was also considering terminating the lease bn account of the use of the premises by the lessees for illegal ■ activities, if such could be’done be *202 fore the 1949 winter- season. She approached the plaintiffs with her problems in July of 1949.' They agreed to represent her and, accordingly, a re'tainér contract was entered into on July 7, 1949, providing for the payment óf a retainer fee of $2,500 to “cover the cost of filing the aforementioned suit for a declaratory decree and for 'handling all matters pertaining thereto,” and for a further fee of $2,500 if the plaintiffs were able to effect, either by court decree or by settlement, a cancellation of the. lease by October 1, 1949. The only other provisión for a fee was 'as follows :
“I further agree that in • the event you are able by court decree or settlement to effect my,keeping all or part of the $20,000 hereinabove referred to which, under the present provisions of the lease I am required to, return- to the lessees in -two equal payments of $10,000 each, that you shall be entitled to 25% of the said $20,000 or such part of said $20,000 that you are able to effect my keeping.”
The reference to the “$20,000 herein-above referred to” was in a preceding paragraph of the retainer contract, reading 'as follows:
“Said suit shall also seek to clarify my position, with reference to the security which I now hold, to wit: the sum of $50,000, to the end that no part of it should be returned to the lessees (the lease agreement provides for $20,000.00 of the $50,000.00 tq be returned to the lessees prior to - the time that the lessees must vacate the premises) on the basis that the damage caused by the failure of the lessees to repair and otherwise maintain the premises will exceed the sum of $50,000.00." (Emphasis is supplied.)
The plaintiffs, pursuant to their agreement, in September 1949 filed suit on behalf of defendant against the lessees for damages for breach of their - covenant to repair the premises, alleging damages .in the amount of $50,000, the defendant having dropped the idea of a suit to cancel the contract because of lack of evidence of the illegal activities which she believed were being conducted on the premises. The complaint contained a claim for damages to personalty — but this was obviously, as stated 'by one of plaintiffs, for “puffing” purposes only, since no duty rested on the lessees at that time to account for damages to or loss, of personalty — this came into being only at the expiration of the contract some 13 months later — and this phase of the. litigation was abandoned early in its. course. The suit resulted in a final decree in August 1950, awarding defendant (who was, of course, plaintiff in that suit) damages in the amount of almost $20,000. The plaintiffs, after deducting their fee in accordance with their retainer contract, forwarded the. balance to the defejidant. Two or .three-days later, the lessees filed in the same cause a “petb tion” asking the court to authorize the termination of the contract in advance of the date specified therein and make a determination of the amount of the security deposit due to them, after deducting for damage to and shortage in personalty in the hotel. The plaintiffs and defendant, after consultation, agreed not to contest the propriety of filing such á petition in the same cause and to proceed to a determination' of the issues raised thereby. Nothing was said between the parties as to a fee for services in this connection. The matter was finally concluded late in 1950, and defendant was awarded for damages to and shortage in personalty, the sum of some $25,800. Upon the plaintiff’s claiming a fee for their services in connection with the personalty; the defendant refused to pay, stating that this was all covered by the contract. The instant suit followed.
The chancellor, in his decree, simply found that “the equities are with the defendant,” and denied compensation. But he must have agreed with plaintiffs that the contract was ambiguous, since he denied defendant’s motion to dismiss and to transfer the suit to the law side of the court, and thereafter heard considerable testimony as to the circumstances existing when the contract was made. If this *203 be true, then the Chancellor clearly erred in holding that the subsequent litigation, which dealt solely with the inventory of personalty, was within the contemplation of the parties at the time the retainer contract was made, since all the evidence adduced by the plaintiffs, and which was not denied by the defendant, was to the contrary.
And if it be considered that the Chancellor decided in defendant’s favor on the basis of the defendant’s contention, that is, that the contract spoke for itself, then it is my opinion that there was still error. There is nothing in the retainer contract to show that the parties intended the retainer fee of $2,500 to be compensation for any services other than in this one suit. They did not agree to handle any and all litigation concerning this particular lease, no matter when it arose. The contract speaks always of “this suit” or “said suit”. Certainly, if, after the entry of the decree on the realty, the defendant had been required to defend a separate suit filed by the lessees at the expiration of the leasehold term, in October of 1950, to require the payment to them of the balance of their security deposit, $30,000, due at that time, I think there can be no question but that the defense of such a suit by plaintiffs on behalf of the defendant would clearly have been outside the scope of the retainer contract of July 7, 1949. Or, let us assume that the lessees, upon the expiration of their leasehold term, refused to vacate the premises and the defendant was required to institute eviction proceedings against them. Could the defendant then claim that services by plaintiffs rendered in that connection would be within the scope of the retainer contract? Certainly not.
To all intents and purposes, the “petition” filed in the cause by the . lessees was a brand new suit, concerned with an entirely separate matter from that -adjudicated in the suit filed by the plaintiffs on behalf of the defendant; instead of being filed on or after October 31, 1950, as a separate cause of action, it was filed in August 1950 in the same cause, and styled a “petition”. But that does not change its essential character; it was a new and different suit, concerned only with loss of inventory of personal property. It was not based on-“damage caused by the failure of the lessees to 'repair and otherwise maintain the -premises”, which had already been adjudicated and final decree entered:
The parties were in a court of equity. And, in my opinion, to allow the plaintiffs to be penalized simply because they consented, as a matter of convenience to the parties, to the immediate adjudication-, in the style of the same cause, of the questions relating to. personalty would be unjust and inequitable.
I would reverse the decree appealed from and remand the cause to the lower court with directions to award to the plaintiffs such fee as, 'in his opinion, is reasonable for ' their services' in connection with the subsequent litigation regarding the personalty.